UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NO. 2:14-769-1 |
| | § | |
| OMAR MATA-LUNA, | § | |
|   Defendant. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court are Defendant Omar Mata-Luna's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c) (D.E. 128), Motion Requesting a Hearing on Defendant's Motion for Compassionate Release (D.E. 130), and Supplement Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c) (D.E. 133), to which the Government has responded (D.E. 134).

**I. BACKGROUND**

On October 21, 2014, Defendant was arrested in Weslaco, Texas, for the state offenses of aggravated robbery and aggravated assault with a deadly weapon.[1] Less than a month later, he was indicted by a federal grand jury for the offense of conspiracy to transport undocumented aliens.[2] He remained in state custody until he was writted into federal custody on January 15, 2015. He eventually pled guilty to the federal charge and was sentenced on July 28, 2015, to 62

---

[1]. According to the Presentence Investigation Report (PSR, D.E. 82), on September 22, 2014, officers responded to a shooting at the Weslaco Inn Hotel. A man named David Diaz told officers that he and some friends were visiting near the pool when he was approached by a 14-year-old boy who told him Defendant wanted to talk to him. After a conversation regarding money allegedly owed to Defendant, Defendant ordered Diaz to go into one of the hotel rooms. When Diaz refused, Defendant pointed a gun at him and struck him in the side of the head with it. When Diaz tried to run, Defendant shot at him, striking him in the arm. Diaz eventually made it to his car. He sped off, and Defendant began shooting at the car.

[2]. According to the PSR, Defendant was involved in the transportation of undocumented aliens on July 30, 2014; August 23, 2014; and October 9, 2014. He was held responsible for the transportation of 15 aliens.

months' custody in the Bureau of Prisons (BOP). There was no discussion at his federal sentencing hearing regarding whether his federal sentence was to run concurrent with his pending state case.

Immediately after receiving his federal sentence, Defendant was returned to state custody and sent to Hidalgo County, Texas. He pled guilty to aggravated assault with a deadly weapon on August 24, 2015, and was sentenced the same day to nine years' custody in the Texas Department of Criminal Justice (TDCJ), to run concurrent with his federal sentence. The aggravated robbery charge was dismissed. On March 4, 2020, Defendant was released on parole and transferred to the Joe Corley Detention Center located in Conroe, Texas. He is currently housed at the Beaumont Medium FCI and has a projected release date, after good time credit, of July 27, 2024.

## II. MOTION FOR COMPASSIONATE RELEASE

Defendant moves the Court to reduce his sentence to time served because his underlying medical conditions (hypertension, high cholesterol, type II diabetes, coronary artery disease, and recent coronary artery bypass surgery) make him particularly vulnerable to severe illness or death should he contract COVID-19 in prison. The Government opposes a sentence reduction on the grounds that: (1) Defendant has not exhausted his administrative remedies within the BOP; (2) COVID-related concerns alone do not constitute extraordinary and compelling reasons for relief; and (3) Defendant is a public-safety risk.

### A. Legal Standard

The statute, 18 U.S.C. § 3582(c)(1)(A), authorizes a court to reduce a defendant's sentence under limited circumstances:

> **(c) Modification of an Imposed Term of Imprisonment.—**The court may not modify a term of imprisonment once it has been imposed except that—

>  (1) in any case—
>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant *after the defendant has fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>> (i) *extraordinary and compelling reasons warrant such a reduction . . .* and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

"Although not dispositive, the commentary to the United States Sentencing Guidelines ('U.S.S.G.') § 1B1.13 informs [the Court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (citing *United States v. Rivas*, — Fed. App'x —, 2020 WL 6437288, at *2 (5th Cir. Nov. 2, 2020)).

> **(A) Medical Condition of the Defendant.—**
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is—
>> (I) suffering from a serious physical or medical condition,
>> (II) suffering from a serious functional or cognitive impairment, or
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(B) Age of the Defendant. –**
> The defendant is (i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and

>> (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less;
>
> **(C) Family Circumstances. –**
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> **(D) Other Reasons. –**
> As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13(1)(A), Application Note 1.

Even if "extraordinary and compelling reasons" for early release exist, the Guidelines' policy statements provide for a reduction in sentence only if a defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. §3142(g)." U.S.S.G. § 1B1.13(2). Factors relevant to this inquiry include: (1) the nature and circumstances of the offenses of conviction, including whether the offense is a crime of violence, or involves a minor victim, a controlled substance, or a firearm, explosive, or destructive device; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

The Court must also consider whether a reduction is consistent with the applicable section 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. The applicable statutory factors include, among others: the defendant's history and characteristics; the nature and circumstances of the offense; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; the need to

deter criminal conduct and protect the public from further crimes of the defendant; the need to provide the defendant with, among other things, any needed medical treatment; and the various kinds of sentences available.  *See* 18 U.S.C. §§ 3553(a)(1)-(7).

> With respect to motions for compassionate release based on COVID-19:
>
> A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant. Hence, a prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak. . . . [T]he rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person.

*United States v. Koons*, 2020 WL 1940570, at *4 & n.8 (W.D. La. Apr. 21, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

> To be sure, courts around the country, in some exceptional cases, have granted compassionate release where the defendant has demonstrated an increased risk of serious illness if he or she were to contract COVID. . . . But that is certainly not a unanimous approach to every high-risk inmate with preexisting conditions seeking compassionate release.
>
> The courts that granted compassionate release on those bases largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns. . . . Fear of COVID doesn't automatically entitle a prisoner to release.

*Thompson*, 984 F.3d at 434–35 (collecting cases) (internal footnotes and citations omitted).

"In general, the defendant has the burden to show circumstances meeting the test for compassionate release." *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019).

5

### B. Analysis

Defendant is 44 years old. Relevant to his COVID-19 concerns, his BOP medical records indicate that he currently suffers from type II diabetes mellitus, hypertension, and coronary artery disease. He also underwent coronary artery bypass surgery on March 8, 2019. According to the Centers for Disease Control and Prevention, having either type II diabetes, coronary artery disease, and "possibly" hypertension "can make you more likely to get severely ill from COVID-19." *People with Certain Medical Conditions*, CDC (Mar. 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

The Government opposes compassionate release for several reasons, including that Defendant failed to exhaust his administrative remedies within the BOP before seeking judicial relief. In his initial motion for compassionate release, Defendant argued that the Court should waive the exhaustion requirement because he was not in a BOP facility at the time, but was instead being held at a detention facility mainly used by Immigration and Customs Enforcement. His supplemental motion states that he "is currently being held at FCI Beaumont Medium correctional institute. He has been in BOP custody for approximately 6 months." D.E. 133, p. 2. Despite being in BOP custody for several months, Defendant does not indicate that he ever requested relief from the warden, as required under § 3582.

"Courts in the Southern District of Texas have ruled that defendants who move for compassionate release still need to initially petition the BOP and, subsequently, fully exhaust their administrative rights to appeal or wait for 30 days to lapse from such a petition in order to bring a motion pursuant to 18 U.S.C. § 3582(c)(1)(A)." *United States v. Gomez*, 2020 WL 2061537, at *1 (S.D. Tex. Apr. 29, 2020) (citing *United States v. Licciardello*, 2020 WL

1942787 (S.D. Tex. Apr. 22, 2020); *United States v. Orellana*, 2020 WL 1853797, at *1 (S.D. Tex. Apr. 10, 2020)). *See also, e.g.*, *United States v. Reeves*, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020). ("While the Court is well aware of the effects the Covid-19 pandemic . . . , § 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse Reeves' failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Clark*, 2020 WL 1557397, at *3 (M.D. La. Apr. 1, 2020) (denying motion for compassionate release based on fears of contracting COVID-19 in prison where defendant conceded he had not exhausted administrative remedies). Because Defendant has failed to demonstrate that he has complied with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it.

### III. MOTION TO RUN FEDERAL AND STATE SENTENCES CONCURRENT

In the alternative, Defendant moves the Court for an order modifying his federal judgment to reflect that his federal sentence shall run concurrent with his state sentence. The Government argues that Defendant should not be given credit for the time he served in state custody for aggravated assault because his state and federal crimes did not arise out of the same conduct and he should not benefit from committing crimes faster than he can be prosecuted.

**A. Legal Standard**

"Well-settled federal law presumes that when multiple terms of imprisonment are imposed at different times, they will run consecutively unless the district court specifically orders that they run concurrently." *Free v. Miles*, 333 F.3d 550, 553 (5th Cir. 2003); *see also* 18 U.S.C. § 3584(a); *Hunter v. Tamez*, 622 F.3d 427 (5th Cir. 2010). Although a federal court has discretion to permit the concurrent running of a yet-to-be imposed state sentence, the court must include an express statement in the federal judgment; otherwise there is a presumption that the

sentences run consecutively. *United States v. Hernandez*, 234 F.3d 252, 256 (5th Cir. 2000) ("district court may order that a federal sentence run concurrent with a forthcoming state sentence").

### B. Analysis

While the Texas state court ordered Defendant's sentence for aggravated assault with a deadly weapon to run concurrently with his federal sentence, the federal judgment is silent. The presumption is that Defendant's federal sentence runs consecutively to his later-imposed state sentence, and the Court has limited authority to amend the judgment.

The issue of whether Defendant's forthcoming state sentence would run consecutively or concurrently with his federal sentence was not raised during sentencing by Defendant or anyone else, and the Court made no comment on concurrency. 7/28/2015 Sent. Tr., D.E. 126. Because the written judgment accurately reflects the Court's oral pronouncement, the Court has no authority to correct Defendant's sentence pursuant to Federal Rule of Criminal Procedure 36. *See United States v. Castro*, 2011 WL 2412902, at *2 (S.D. Tex. June 15, 2011); *see also United States v. Roth*, 359 F. App'x 453, 454–55 (5th Cir. 2009) (denying motion under Rule 36 to run sentences concurrently where "[t]he judgment is consistent with the court's verbal explanation of the sentence" and "does not contradict anything that the judge said at the sentencing hearing"); *United States v. Nunez*, 168 F. App'x 653, 654 (5th Cir. 2006) (district court made no clerical error in its written judgments and did not err in denying Rule 36 motion, where judgment was silent as to concurrency and court made no comment on concurrency at sentencing). The Court similarly "has no authority to modify defendant's judgment or otherwise 'order,' post-judgment, that the sentences run concurrently or consecutively." *United States v. Torres*, 2018 WL 3150678, at *2 (E.D.N.C. June 27, 2018) (citing *Dillon v. United States*, 560 U.S. 817, 824

(2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.") (quoting 18 U.S.C. § 3582(b)) (alterations in *Dillon*)).

However, Defendant is not without any recourse. "Under the BOP's nunc pro tunc designation procedure set forth in [BOP Program Statement] BOPPS 5160.05, 'where a federal sentence was imposed before a state sentence, the BOP may indirectly award credit for time served in state prison by designating nunc pro tunc the state prison as the place in which the prisoner serves a portion of his federal sentence.'" *United States v. Jack*, 566 F. App'x 331, 332 (5th Cir. 2014) (quoting *Pierce v. Holder*, 614 F.3d 158, 160 (5th Cir. 2010)). BOPPS 5160.05 provides that an inmate "may request a nunc pro tunc (i.e., occurring now as though it had occurred in the past) designation" listing a state institution as his place of confinement, and "the Bureau must consider an inmate's request." BOPPS 5160.05 § 9(b)(4). In cases where the state court ordered an inmate's sentences to run concurrently but the federal court was silent, "one might reasonably expect the BOP to exercise its discretion to weigh heavily what the state judge *did say* rather than what the federal judge *did not* . . . ." *Mangum v. Hallembaek*, 824 F.3d 98, 103 (4th Cir. 2016) (emphasis in original).

Finally, while a "district court has no authority under BOPPS 5160.05 to make a nunc pro tunc designation, [] it may review a challenge to the BOP's refusal to make such a designation in a § 2241 petition." *Jack*, 566 F. App'x at 332. *See also Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (A writ of habeas corpus pursuant to 28 U.S.C. § 2241 is the appropriate vehicle in which "a sentenced prisoner attacks . . . the prison authorities' determination of its duration.") (citations omitted). A defendant is required to exhaust available administrative remedies through the BOP before litigating the computation of his sentence in federal court. *United States v.*

9

*Wilson*, 503 U.S. 329, 335 (1992) (citing 28 C.F.R. §§ 542.10–542.16 and collecting cases). Any challenge to the BOP's calculation of sentencing credit pursuant to § 2241 must be filed in the district where the defendant is incarcerated. *See Pack*, 218 F.3d at 451.

Defendant is currently incarcerated at FCI Beaumont Medium, which is located in the Eastern District of Texas. He does not claim to have filed a formal request under BOPPS 5160.05 or otherwise exhausted his administrative remedies. Assuming Defendant remains incarcerated in Beaumont, he should file any § 2241 petition in the Eastern District of Texas after first exhausting his administrative remedies.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c) (D.E. 128), Motion Requesting a Hearing on Defendant's Motion for Compassionate Release (D.E. 130), and Supplement Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c) (D.E. 133) are **DENIED**.

It is so **ORDERED** this 19th day of April, 2021.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE